**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CESAR OBDULIO PAZ MALDONADO, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNION PACIFIC RAILROAD CO., et al., )<br>)<br>Defendants, )<br>) | Case No. 09-1187-EFM |

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion for an order compelling plaintiff Cesar Paz to submit to two examinations pursuant to Fed. R. Civ. P. 35. (Doc. 67). Specifically, defendants seek an order compelling Mr. Paz to submit to two medical examinations on March 1, 2, and 3, 2010. Plaintiff opposes the motion and, alternatively, requests that certain conditions be imposed if the examinations are ordered. As explained in greater detail below, defendants' motion shall be GRANTED WITH CONDITIONS.

**Background**

Mr. Paz was a passenger in a car that was struck by a train at a railroad crossing in Wichita, Kansas on April 29, 2008. Highly summarized, the complaint filed by Mr. Paz

seeks to recover damages from defendants based on allegations of negligence and "other wrongs." His alleged injuries include "numerous fractures, internal injuries, loss of all teeth, loss of memory, [and] traumatic brain injury." He seeks monetary damages for his injuries and "extensive pain, suffering, mental anguish, emotional distress, permanent disabilities, loss of earning capacity, loss of ability to do household chores, medical and surgical expenses, [and] economic and non-economic losses."

Mr. Paz is a citizen of Honduras who has lived and worked in the United States for an unknown period of time.[1] Currently he lives in New Orleans, Louisiana, and participates in some sort of rehabilitation clinic operated by Dr. Voogt, one of plaintiff's retained experts. Plaintiff's counsel recently advised the court and defense counsel that (1) Mr. Paz expressed his intention to leave the United States and return to Honduras and (2) it was unlikely Mr. Paz would return to the United States in the near future. Because of the uncertainty of Mr. Paz's future availability in the United States, the court encouraged defendants to complete their discovery as soon as practicable. In response to the court's admonition, defendants filed the pending motion for two Rule 35 examinations.

## Defendants' Motion to Compel Rule 35 Examinations

Fed. R. Civ. P. 35(a)(1) grants the court discretionary authority to order a party to submit to a physical or mental examination if the party's mental or physical condition is in

---

[1] His immigration status is unclear. Mr. Paz refused to answer certain deposition questions concerning his status based on the Fifth Amendment.

controversy. The "order" may only be issued "on motion for good cause" and after notice to all parties and the person to be examined. Rule 35(a)(2)(A). Additionally, the "order" must specify the time, place, manner, conditions, and scope of the examination, as well as the person who will perform the exam. Rule 35(a)(2)(B). As noted above, defendants move for an order compelling Mr. Paz to submit to (1) a physical examination by Dr. Chris Fevurly, M.D., on March 1, 2010 and (2) a neuropsychological exam by Dr. Patrick Caffrey, Ph.D, on March 2 and 3, 2010.

Mr. Paz opposes the motion, arguing that defendants have failed to show "good cause" for the examinations because plaintiff's medical records have been provided to defendants; therefore, the information sought is "easily obtainable from other sources that are more convenient, less burdensome, and less expensive." Plaintiff's argument that the examinations should be denied because "the information is easily obtainable from other sources" is not persuasive. Mr. Paz has been examined *in person* by at least three medical experts retained by plaintiff to support his damage claims. Precluding defendants' retained medical experts from a similar opportunity to examine plaintiff *in person* is unfair and summarily rejected.[2]

Plaintiff also asserts a more general attack on defendants' motion, arguing that defendants' motion fails to satisfy the "good cause" requirement set forth in Schagenhuf v.

---

[2] In a related argument, plaintiff asserts that the examinations should be rejected because the discovery is unreasonably cumulative or duplicative and that defendants should rely on data and test results from plaintiff's experts. This argument is summarily rejected. Plaintiff retained experts to support his claims in this case and defendants are similarly entitled to retained experts and conduct relevant discovery.

Holder, 379 U.S. 104 (1964). Again, plaintiff's argument is not persuasive. Schagenhuf held that Rule 35

> requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause' which requirements . . . are necessarily related.

Id. at 118-119. Moreover, contrary to plaintiff's argument that defendants failed to make the necessary showing, Schagenhuf held that an evidentiary showing was not required in every case and that

> there are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injuries places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.

Id. at 119 (internal citations omitted). The above example is identical to the situation in the case before the court.[3] Accordingly, the court finds that Mr. Paz's mental and physical injuries are clearly "in controversy" and that defendants have "good cause" for a Rule 35 examination.

---

[3] The circumstances surrounding the Rule 35 motion and the party to be examined in Schagenhuf were materially different from this case. The party to be examined in Schagenhuf was a defendant bus driver who did not place his medical or mental condition in issue in any of his pleadings. Rather, a co-defendant asserted in vague terms that the defendant bus driver was "not mentally or physically capable of driving a bus at the time of the accident" and requested that the bus driver be examined by no less than nine specialists in (1) internal medicine, (2) ophthalmology, (3) psychiatry, and (4) neurology.

**Conditions**

An order granting a motion for a Rule 35 examination "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Rule 35(a)(2)(B). Defendant proposes that medical examinations be conducted by Dr. Chris Fevurly in Lawrence, Kansas on March 1, 2010 and that a neuropsychological examination be conducted by Dr. Patrick Caffrey on March 2 and 3, 2010 in Kansas City, Missouri. Plaintiff counters that the examinations should be conducted in New Orleans where Mr. Paz currently lives.

The general rule is that the plaintiff must appear for examination in the state in which he filed his lawsuit. McCloskey v. United Parcel Service General Service Co., 171 F.R.D. 268, 270 (D. Or. 1977)(citing Eckmyre v. Lamber, 1998 Lexis 10849 (D. Kan. 1998). Plaintiff provides no persuasive reason why the general rule should not be followed. However, because the case was filed in Wichita, Kansas, and the examinations have been scheduled in Lawrence and Kansas City, the court will require defendants to pay Mr. Paz's travel expenses between Wichita, Kansas and the Kansas City area as well as any meal and lodging expenses.

Plaintiff also requests permission to have his own translator present during the examinations. The proposed translator would be "a disinterested third-party" with whom plaintiff has had no dealings. Defendants oppose the motion, arguing that the use of plaintiff's own translator "would potentially disrupt the exams and bring an unnecessary adversarial posture to the examinations." Doc. 71, p. 3. Defendants also explain that they

have made arrangements for the same interpreter, Oscar Vigliano, to be present at both examinations. Mr. Vigliano works for Transimpex, a Kansas City, Missouri company providing translation services.

The suggestion that plaintiff's "disinterested third-party" translator "would potentially disrupt the exams" is wholly speculative and rejected. Defendants' suggestion that the translator would introduce "an unnecessary adversarial posture to the examinations" is similarly rejected. The nature and extent of plaintiff's injuries are materially disputed issues in this case and plaintiff will be examined by experts retained by defendants. Under the circumstances, it is hard to imagine a more adversarial situation.

However, there is no reason to question the independence of Mr. Vigliano's interpretive services. Moreover, as explained in greater detail below, the court will order that the examinations be videotaped and any disputes concerning the accuracy of his interpretive services can be more easily resolved. Under the circumstances, plaintiff's request to bring a different interpreter to the examinations is unnecessary and rejected.

Plaintiff also requests that counsel be present during the examinations or that the examinations be videotaped. Defendants strongly oppose the conditions suggested by plaintiff, arguing that the majority view is that Rule 35 examinations are generally not recorded and that counsel is not permitted to attend. Herstentein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620 (D. Kan. 1999). Defendants contend that plaintiff has failed to show cause why the examinations should be recorded or a third-party should attend. Moreover, Dr. Caffrey has advised defense counsel that he will withdraw from involvement

if the examination is recorded or a third-party is present. Defendants' arguments will be addressed in reverse order.

Dr. Caffrey's apparent position that he will not participate in the examinations if they are recorded or a third-party is present is of absolutely no significance. Rule 35(a)(2)(B) provides that the *court*, when issuing the order, determines the conditions of the examination. A party who retains an expert who refuses to recognize the court's authority and rulings does so at its own peril.

Defendants' reliance on Herstentein is also not persuasive. In Herstentein, Judge Rushfelt concluded that plaintiff had no right to have the examination recorded or counsel present absent a showing of good cause. Id. at 629. Judge Rushfelt adopted this position for the following reasons:

> First, an independent medical examination should be divested as far as possible of any adversary character. The presence of a lawyer injects a partisan character into what should otherwise be a wholly objective inquiry. Second, the presence of a lawyer creates a potential ethical problem since he becomes a possible witness and might therefore have to withdraw as trial counsel. Third, should the examining physicians improperly question the plaintiff, or if the plaintiff makes statements not germane to the examination, they may be objected to prior to or at trial, at which time an appropriate ruling can be made.

Id. at 629 (quoting Dodd-Anderson v. Stevens, 1993 WL 273373 at *2 (D. Kan. May 4, 1993)(Judge Reid). With due respect to Judge Rushfelt and Judge Reid, the court agrees that an *independent* medical examination is best achieved in a non-adversarial context. However,

there is nothing "independent" about a Rule 35 examination.[4] A Rule 35 examination arises only in the context of litigation and then is only permissible when a party's mental or physical condition "is in controversy." The movant proposes the doctor who will conduct the examination and, as in this case, the doctor is a retained expert representing only one party in the case. For better or worse, a Rule 35 examination is part of our adversary system and is not "a wholly objective inquiry."

The second rationale, that the attorney might become a witness, is also not persuasive. That an attorney might somehow become a witness in the case if another witness fabricates testimony is always a possibility. More importantly, the possibility that an attorney might be forced to withdraw if he becomes a witness simply provides justification for recording the examination in the first place. Finally, it is not at all clear how counsel can later object to "improper" questions if the examination is not recorded and counsel does not know exactly what questions were asked. The rationales discussed in Herstentein and Dodd-Anderson are not persuasive.

Defendants also cite Dr. Caffrey's opinion that examinations are less effective when third-parties are present or the examination is recorded. No doubt the absence of a third-party during a normal doctor-patient examination is the favored approach in the health profession; however, a Rule 35 examination is anything but "normal." As noted throughout this opinion, a Rule 35 examination is conducted in the context of litigation and is part of the

---

[4] Rule 35 does not mention the term "independent" and there is no requirement that the person conducting the examination be disinterested or "independent."

- 8 -

adversarial process. Plaintiff is not seeking treatment from Dr. Caffrey and understands that Dr. Caffrey has been retained by defendants. An adversarial relationship exists before plaintiff ever arrives at the doctor's office. Under the circumstances, Dr. Caffrey's opinion concerning the presence of a third-party or recording the exam is not persuasive.

In addition to the above reasons, the court concludes that the examinations of plaintiff should be video-taped because plaintiff requires an interpreter. Equally important, Mr. Paz alleges that his memory and mental abilities have been compromised. Although defendants dispute this allegation, the issue obviously cannot be resolved at this time. Because of plaintiff's need for an interpreter and his arguably compromised mental abilities, the court concludes that the examinations shall be videotaped.

**IT IS THEREFORE ORDERED** that defendants' motion for an order requiring plaintiff to submit to two Rule 35 examinations **(Doc. 67)** is **GRANTED WITH THE CONDITIONS SET FORTH HEREIN.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion

was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 25th day of February 2010.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge