# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CESAR OBDULIO PAZ MALDONADO, et al.,

      Plaintiffs,

v.                                     Case No. 09-1187-EFM

UNION PACIFIC RAILROAD CO., et al.,

      Defendants,

## MEMORANDUM AND ORDER

This matter is before the court on the following motions:

    1. Plaintiffs' Motion to Compel (Doc. 40);

    2. Defendants' Motion for a Protective Order (Doc. 45); and

    3. Defendants' Motion to Quash and for a Protective Order (Doc. 58).

The rulings are set forth below.

## Background

Highly summarized, Gerson Banegas and Cesar Paz were riding in a car that was struck by a train at a railroad crossing in Wichita, Kansas on April 29, 2008. Two of the plaintiffs recently accepted defendants' offers of judgment and Mr. Paz is the only plaintiff

whose claims have not been resolved. (Doc. 86 & 87).[1] His alleged injuries include "numerous fractures, internal injuries, loss of all teeth, loss of memory, [and] traumatic brain injury." Mr. Paz seeks monetary damages for "extensive pain, suffering, mental anguish, emotional distress, permanent disabilities, loss of earning capacity, loss of ability to do household chores, medical and surgical expenses, [and] economic and non-economic losses." He is a citizen of Honduras who has lived and worked in the United States for an unknown period of time.[2]

**Plaintiffs' Motion to Compel (Doc. 40)**
**and**
**Defendants' Motion for a Protective Order (Doc. 45)**

Originally, plaintiffs moved to compel production of documents and records related to 19 topics. (Doc. 40, p. 5-6). Defendants opposed the motion and the Union Pacific Railroad Company (Union Pacific) separately moved for a protective order concerning its video recording of the accident (Doc. 45). The parties have resolved most of their production disputes and advised the court that the only issues requiring a ruling at this time concern:

- Locomotive event recorder data and the software to analyze the data, and

---

[1] Zuyapa Jimenez, surviving wife and heir of Gerson Banegas, and Jesus H. Guerrero, administrator for the estate of Gerson Banegas technically remain plaintiffs in the case at this time. For editorial clarity and consistency, the court will continue to refer to "plaintiffs" in the plural form.

[2] His immigration status is unclear. Mr. Paz refused to answer certain deposition questions concerning his status based on the Fifth Amendment. Mr. Paz has now returned to Honduras.

-2-

- The files and any related software needed to analyze the locomotive camera video.

The disputed topics and the parties' arguments are addressed in greater detail below.

**Video of the Accident**

Union Pacific concedes that plaintiffs are entitled to discovery of the video but move for a protective order.[3] Specifically, Union Pacific seeks an order "prohibiting the parties, any employees of the parties' law firm, and any experts whom the parties may retain in this case to the production (sic) or disclosure of this video to any persons outside this case or to the Internet or any other electronic media." Plaintiffs oppose the motion, arguing that Union Pacific has not justified its request for a protective order.

Union Pacific argues that the requested protective order is warranted because "You Tube" and similar websites allow the posting and sharing of videos and, absent a prohibition on dissemination, plaintiffs' counsel or other members of the public "would be free to share, upload, splice, edit, and manipulate the video with complete impunity." Union Pacific also asserts that the video "could become marketing fodder for attorneys representing plaintiffs' in railroad crossing litigation" and "could be spliced, edited, or manipulated in countless ways to transmit a particular message."

The court has reviewed the video of the accident and is not persuaded that the video

---

[3] Indeed, Union Pacific previously made the video available to plaintiffs' counsel for viewing and is willing to provide plaintiffs' counsel with a copy of the video if they will stipulate that the video will not be disclosed or disseminated to others pending the ruling on the motion for a protective order.

-3-

is as horrific as suggested by Union Pacific. Although the court is sensitive to the fact that an individual died in the collision, the video simply does not include gruesome images of death or injury. The video camera is positioned relatively high on the front of the locomotive and is focused forward rather than downward. At worst, the video shows plaintiffs' car (1) traveling in the same direction as the train on a road that parallels the railroad tracks, (2) slowing down for an intersection, (3) turning right without stopping, and (3) proceeding through the railroad crossing. The video does not show the actual contact between the train and car but it is obvious to the viewer that some sort of collision has occurred. Contrary to Union Pacific's assertions, the video does not rise to the level of "entertainment for gawkers looking to satisfy their morbid curiosity."

Union Pacific's related argument that some unknown person could somehow "upload, splice, edit, and manipulate the video, with complete impunity" to show "something else" is equally unpersuasive. For better or worse, technology exists that allows individuals to modify or manipulate virtually any video, picture, or document. The fact that some unknown person can manufacture a fake video or picture does not, in and of itself, justify entry of a protective order.[4]

Union Pacific also argues that "without a protective order the video of the accident could become marketing fodder for attorneys representing plaintiffs in railroad crossing

---

[4] Union Pacific's argument, if accepted, would justify a protective order for ***any*** video or photograph merely because of the threat that someone might modify the images. The standard proposed by Union Pacific is simply too low and is rejected.

-4-

litigation" and discovery materials should not be used for commercial benefit. However, there is no evidence whatsoever that plaintiffs' counsel seeks production of the video for commercial benefit. This conclusory argument is based on pure speculation and does not justify entry of the protective order requested by Union Pacific.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel production of the video data and the software to view it is GRANTED and Union Pacific's motion for a protective order **(Doc. 45)** is **DENIED.**

**Event Recorder Data and Related Software**

Plaintiffs seek to compel "all locomotive event recorder data that the defendants downloaded as a result of the accident" as well as the software to interpret the data. Defendants oppose the motion and propose providing six minutes of "graphic" data and approximately one minute of "tabular" data from the locomotives.[5] Additionally, defendants offer to provide a Union Pacific witness for deposition with the downloaded data on a laptop for plaintiffs' viewing.

An event recorder captures detailed information concerning the operation of each locomotive and unquestionably contains information relevant to this collision and the issues

---

[5] Apparently, four locomotive engines were involved and each locomotive had an event recorder. The "graphic" data would cover five minutes before the collision and one minute after the collision. The "tabular" data would cover one minute before the accident and would continue until the train came to a rest.

-5-

in this lawsuit.[6] The parties' discovery dispute concerns (1) how much data is produced and (2) the manner of production.

With respect to the volume of requested data, defendants assert that each recorder download "contains hours, and in some cases, days of data that were generated before the crew involved in the accident had even boarded the subject locomotives" and plaintiffs have not shown any reason for the production of "all" downloaded data.[7] Defendants also argue that there is a burden associated with producing *all* of this information because producing "one hour of event recorder data takes twelve hours to print out the material and consumes about 100 pages of paper." In a related argument, defendants contend that they are limited in the manner of producing the data because of licensing agreements associated with the software. Plaintiffs counter with various reasons why production of a larger amount of data than proposed by defendants is appropriate and also argue that plaintiffs' counsel should be granted the same opportunity to examine the data as provided to defense counsel and defendants' experts.

The court is persuaded that the relevant time frame should include the period of time beginning when the train crew involved in the accident started their shift on this particular train and ending when the train stopped moving following the collision. This time period

---

[6] For example, the recorder captures (1) distance, (2) speed, (3) direction, (4) "track effort," (5) horn, (6) bell, (8) throttle and (9) brake information by the second.

[7] According to defendants, a single "download" of an event recorder contains between 3 and 30 days of information.

will provide sufficient information concerning (1) the actions of the crew in operating the train on the day in question, (2) whether there were any defects in the event recorder itself, (3) whether the horn actuation was accurately recorded, (4) a history of the operation of the train for use when deposing the crew, (5) the final resting point of the train, and (6) a comparison with dispatch communications and the signal system adjacent to the tracks.

With respect to the manner of production, the court agrees that plaintiffs' counsel and experts should have the same opportunity to view the event recorder data as defendants' counsel and defense experts.[8] Because this data apparently can only be analyzed with the use of software licensed by a third party to defendants, defendants have two choices.[9] First, defendants can contact the software provider and secure permission to provide the software to plaintiffs' counsel pursuant to a protective order limiting use of the software to this case. If defendant is unwilling or unable to secure permission for plaintiffs to utilize the software on plaintiffs' computer, defendants shall provide plaintiffs and plaintiffs' experts with access

---

[8] The evidence before the court is that defendants and their experts have no limitations in accessing event recorder data with the use of a third-party provider's software.

Defendants' proposal to print certain data is, in the first instance, an inadequate production response to plaintiffs' request to see the actual data. Similarly, defendants' offer to provide a "one-shot" deposition witness is inadequate. Plaintiffs are entitled to a reasonable opportunity to view and analyze the data.

[9] Defendants' arguments concerning the software agreement appear purposefully vague and there is no indication whether anyone has asked whether the software could be provided to plaintiffs and/or the cost to provide the software to plaintiffs pursuant to a protective order.

to defendants' computer loaded with the data and the software. The data, software, and computer will remain the property of defendants but must be made available to plaintiffs for examination of the data at a mutually agreeable time and location. If the parties are unable to agree to production at a mutually agreeable location and time, the court will order that the computer be examined in a room at the U.S. District courthouse located in Wichita, Kansas. An attorney of record for defendants shall appear in person with a person capable of downloading requested data into a useable format for plaintiffs and shall remain as long as is necessary for plaintiffs to complete their examination of the data.[10]

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 40)** is **GRANTED** consistent with the rulings expressed herein. Defendants shall advise the court whether a mutually agreeable date and time for production has been reached on or before **May 25, 2010.**

---

[10] Plaintiffs' request that the court conduct a hearing on the software license and the relationship between the defendants and the third-party software provider is rejected at this time. However, the court reserves its authority to examine the license and the defendants' relationship with the software supplier if problems in reviewing the data develop.

### Defendants' Motion to Quash Deposition Notices
### and for a Protective Order (Doc. 58)

The parties have resolved this motion with an agreement that plaintiffs will file new deposition notices. Accordingly, this motion is MOOT.

**IT IS THEREFORE ORDERED** that defendants' motion to quash deposition notices and for a protective order **(Doc. 58)** is **MOOT.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 18th day of May 2010.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge