# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CESAR OBDULIO PAZ MALDONADO, et al.,

    *Plaintiffs,*

vs.

UNION PACIFIC RAILROAD CO., et al.,

    *Defendants.*

Case No. 09-1187-EFM

## MEMORANDUM AND ORDER

This case arises out of a train accident that allegedly resulted in the Plaintiff Cesar Obdulio Paz Maldonado ("Paz") suffering multiple injuries. This matter is now before the Court on Defendant Union Pacific Railroad Company's ("UP") motion to Review the Magistrate Judge's Order Denying Its Request for a Protective Order (Doc. 95) and UP's and Defendant Burlington Northern and Sante Fe Railway Company's ("BNSF") joint motion to Review the Magistrate Judge's Rule 35 Orders (Doc. 91). For the reasons stated below, the Court denies Defendant's motion relating to the Magistrate Judge's denial of its request for a protective order (Doc. 95), but denies in part and grants in part Defendants' motion relating to the Magistrate Judge's Rule 35 Orders.

# I. BACKGROUND

Highly summarized, Mr. Paz, a citizen of Honduras, was a passenger in a car that was struck by a train at a railroad crossing in Wichita, Kansas, on April 29, 2008, which resulted in Paz allegedly suffering numerous fractures, internal injuries, loss of all his teeth, loss of memory, and a traumatic brain injury. Because the train had a camera mounted on it, the accident was recorded. Although Paz was working and living in Wichita at the time of the accident, it is unclear whether he was in the United States legally.

Between April 29, 2008, and June 30, 2008, Paz was treated at medical facilities in Wichita. Following his release, Paz met with a number of medical professionals, some of which have been retained as medical experts in this case. At least three of the reports prepared by these professionals indicate that Paz's cognitive abilities and memory have been impaired. On May 26, 2009, Paz filed the present action. Over the next couple of months, two scheduling conferences were held. However, no deadline for Rule 35 examinations was set. At the October 29 scheduling conference, Plaintiff's counsel indicated that Paz was eager to return to Honduras.

On December 1, 2009, Paz, a non-English speaker with a third-grade education, through the assistance of a translator, was deposed in Wichita. During the deposition, Paz stated he would like to return to Honduras as soon as he could,[1] and he pled the Fifth Amendment when asked about his immigration status. Sometime around this date, Paz entered the Neurological Rehabilitation Living Center near New Orleans. On February 9, 2010, Magistrate Judge Humphreys held a status

---

[1] In an affidavit attached to Plaintiff's response to Defendants' motion for review of the Magistrate Judge's Rule 35 Orders, Plaintiff's counsel states that he informed Defendants that Paz wanted to return to Honduras as soon as he possibly could on July 2, 2009. There is nothing in the record that reveals that this fact was before Magistrate Judge Humphreys when she issued her Rule 35 Orders. As a result, the Court will not consider it in deciding Defendants' motions. *See e.g., Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (stating that when a district court reviews a magistrate judge's order on a non-dispositive issue, "it is not permitted to receive further evidence").

conference, at which time Plaintiff's counsel revealed that his client would be leaving the Country imminently. Based on this revelation, and their clients' desire to have their own experts examine Plaintiff, on February 11, defense counsel scheduled Dr. Chris Fevurly to perform a physical examination on March 1, 2010, and Dr. Patrick Caffrey to perform a neurological examination on March 2 and 3. On that same day, counsel informed Plaintiff's counsel of this fact, and Plaintiff's counsel responded by stating that it would be virtually impossible to keep Paz in the Country after the first week in March and that they wanted the examinations videotaped and attended by a translator of Paz's choosing. Not wanting to subject their experts' examinations to plaintiff counsel's requirements, Defendants filed a Rule 35 motion on February 12, requesting, among other things, an order stating that the examinations should not be recorded. Attached to Defendants' motion was an affidavit from Dr. Caffrey stating that he would not perform the exam if it was videotaped because, among other things, it would impair the validity of his examination and compromise the security of his testing materials. On February 25, Magistrate Judge Humphreys issued an order denying Defendants' request and stating that a translator of Defendants' choosing should attend the examination. True to his word, Caffrey notified Defendants that he would not perform the scheduled exam.

On March 1, Defendants' filed a motion asking Magistrate Judge Humphreys to reverse her earlier ruling regarding the recording requirement,[2] or, in the alternative, to grant them an extension of time to find an expert that would perform the examination under the required conditions.[3] While that motion was pending, Paz returned to Honduras. Magistrate Judge Humphreys denied the first

---

[2] The exam with Dr. Fevurly was performed as scheduled.

[3] In their motion to reconsider, Defendants did not challenge any of the other rulings made by Magistrate Judge Humphreys in her February 25 Order.

request contained in Defendants' motion, but granted the second, stating that "defendants' deadline for completing a neuropsychological examination of Mr. Paz is extended with an indefinite deadline, pending the decision by defendants regarding the necessity for an examination in Honduras."[4] It appears that the second clause of the statement just quoted was predicated upon defense counsels' representation that Paz had returned to Honduras and their suggestion that he would not be able to legally reenter the United States for ten years.[5] Defendants filed a motion with this Court to review Magistrate Judge Humphreys' rulings relating to the recording of their Rule 35 neurological examination and the requirement that it take place in Honduras.[6]

In addition to filing the motions described above with Magistrate Judge Humphreys, Defendant UP also filed a motion seeking a protective order limiting the disclosure and dissemination of the video captured by the train. Magistrate Judge Humphreys denied this motion, and Defendant UP filed a motion with this Court asking it to review and reverse Magistrate Judge Humphreys' ruling on that issue.

## II. STANDARD

Upon objection to a magistrate judge's order on a non-dispositive matter, the district court may modify or set aside any portion of the order that it finds to be "clearly erroneous or contrary to law."[7] "To be clearly erroneous, a decision must strike [the Court] as more than just maybe or

---

[4] *See* Doc. 88, at 5.

[5] *See id.*, at 5, n.6.

[6] In their motion, Defendants also request oral argument on this motion. Because the Court finds that Defendants' motion can be resolved without additional argument, it denies their request.

[7] 28 U.S.C. § 636(b)(1)(A); *First Union Mortg. Corp. v. Smith,* 229 F.3d 992, 995 (10th Cir. 2000); Fed. R. Civ. P. 72(a).

-4-

probably wrong."[8] The Court does not conduct a de novo review when reviewing factual findings, but applies a more deferential standard that requires the moving party to show that the magistrate judge's order is clearly erroneous.[9] In contrast, the "contrary to law" standard permits independent review of legal matters.[10] But because a magistrate judge has broad discretion in resolving non-dispositive discovery matters, the Court is required to affirm the magistrate judge's order unless the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed."[11]

### III. ANALYSIS

There are essentially three issues now before the Court: (1) should Magistrate Judge Humphreys' ruling requiring that the Rule 35 neurological examination be recorded be reversed; (2) should Magistrate Judge Humphreys' ruling requiring that the Rule 35 neurological examination take place in Honduras be reversed; and (3) should Magistrate Judge Humphreys' denial of Defendant UP's request for limitations on the disclosure and dissemination of the video captured by the train be reversed. The Court will address these issues in turn.

**Recording Requirement**

Rule 35 states that the Court "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it."[12] Case law establishes that the party seeking the condition must make a good cause showing why the Court should impose

---

[8] *Parts & Elec. Motors, Inc. v. Sterling Elec.*, 866 F.2d 228, 236 (7th Cir. 1988).

[9] *See Burton v. R.J.. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 (D. Kan. 1997).

[10] *McCormick v. City of Lawrence*, 2005 WL 1606595, at *2 (D. Kan. July 8, 2005).

[11] *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991) (the district court generally defers to the magistrate judge and overrules an order only for a clear abuse of discretion).

[12] *See* Fed. R. Civ. P. Rule 35(a)(2)(B).

it.[13] When determining what conditions should be imposed, a federal court "should balance the competing considerations involved in the particular case and set such conditions for the examination as are just."[14] Stated broadly, Defendants argue that Magistrate Judge Humphreys erred in requiring that the neurological examination be recorded because Plaintiff did not put forth sufficient evidence to show that such a condition was warranted and the imposition of the condition is contrary to established case law. For the following reasons, the Court finds that the said condition should not be stricken.

First, there was a sufficient evidentiary basis to support Magistrate Judge Humphreys' conclusion that the examination should be recorded.[15] Plaintiff has a third-grade education and is a non-English speaker. While the fact that an independent translator will be present at the examination greatly reduces the effect that this last fact has on the analysis, the fact that Plaintiff is a non-English speaker is nevertheless relevant. Further, based on Plaintiff's experts' reports and the fact that Plaintiff was a patient at the Neurological Rehabilitation Living Center, the record supports a finding that Plaintiff's memory and other cognitive abilities are impaired.[16] Thus, based on the evidence just described, the Court concludes that Magistrate Judge Humphreys did not clearly err

---

[13] *See Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 628 (D. Kan. 1999); *see also Chaparro v. IBP, Inc.*, 1994 WL 714369, at *2 (D. Kan. Dec. 7, 1994).

[14] *Id.* at 630 (quoting *Galieti v. State Farm Mut. Auto. Ins. Co.*, 154 F.R.D. 262, 265 (D. Colo. 1994)). .

[15] There must be a factual basis for imposing recording conditions because the plaintiff does not have an automatic right to have his examination recorded. *See Hertenstein*, 189 F.R.D. at 629.

[16] Defendants make much of the fact that Plaintiff did not attach any of his experts' reports, which note that Plaintiff's memory and cognitive abilities have been impaired, to his briefing to the Magistrate Judge. This fact is of no consequence, as Defendants did attach these reports to their briefing. Thus, Magistrate Judge Humphreys had this evidence in front of her while deciding the parties' motions.

or act contrary to law in concluding that Plaintiff's current condition warranted recording the examination.[17]

The cases from this District cited by Defendants do not mandate reversal,[18] as they are distinguishable. In none of Defendants' cases was there evidence that the plaintiff's memory or other cognitive abilities were decreased, thus impairing his ability to communicate to his counsel what occurred during the examination. Further, none of these cases involved a plaintiff that required an interpreter, which is significant because the underlying rationale in the cited decisions was that the court did not want to introduce a distraction, i.e., a third party, into what should otherwise be a one-on-one exchange between doctor and patient. Here, where a third party, the translator, is already present such reasoning loses much of it appeal. As a result, Defendants' cases are not dispositive, and the Court must move on to determine if the Magistrate Judge's failure to find that Defendants' interests in not having the examination recorded outweighed Plaintiff's interest was error.

Defendants' first argument against the recording of their examination is that such a requirement makes the playing field uneven. This argument has two parts: the first is that it is unfair that Plaintiff's experts' examinations were not recorded, while their expert's will be, and the second is that there is a very real possibility that only Plaintiff's experts will be able to testify at trial. Beginning with the first part, while it is true that it appears that Plaintiff's experts' examinations

---

[17]*See Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12, 14 (E.D.N.Y. 1989) (allowing a court reporter to be present at the Rule 35 examination because the plaintiff was not well educated and had difficulty with the English language).

[18]*See Jones v. Greyhound Lines, Inc.*, 2009 WL 1650264 (D. Kan. June 12, 2009); *Hertenstein*, 189 F.R.D. 620; *Dodd-Anderson v. Stevens*, 1993 WL 273373 (D. Kan. May 4, 1993). In addition to these cases, Defendants also cite a number of cases from other jurisdictions. These cases are distinguishable from the present case for the same reason that the District of Kansas cases are distinguishable.

were not recorded, thus depriving Defendants of the ability to learn everything that was said and done at these examinations, this fact does not necessarily lead to the conclusion that allowing Plaintiff to record defense counsel's examination makes this proceeding unjust. As noted by this Court previously, defense counsel has a plethora of tools available to them to prepare to cross examine Plaintiff's experts – e.g., they can obtain a detailed written report from Plaintiff's experts, which must set forth the experts' findings, including results of all tests made, diagnosis, and conclusions and depose Plaintiff's testifying experts.[19] Thus, while this contention does carry some weight, it is not entitled to great weight.

As for the second contention, under the facts of this case, it too is not entitled to a great amount of weight. Defendants' position is that allowing the examination to be recorded or attended by a third party will open their expert up to a *Daubert* challenge because the presence of a recorder or third party will lend a degree of artificiality to the interview technique that will be inconsistent with applicable, professional standards. This position finds support in Dr. Caffrey's affidavit and affidavits from other neuropsychologist that defense counsel has previously used in other cases.[20] These affidavits, though, are not uncontroverted. Here, Plaintiff has submitted an affidavit from a neuropsychologist stating that in her "professional opinion, substantiated by empirical research results, that there is no effect on neuropsychological test performance by video camera or by a third party (individual) observing the assessment."[21] This affidavit, coupled with the fact that a translator

---

[19] *See Hertenstein*, 189 F.R.D. at 632.

[20] Noteworthy is the fact that none of these affidavits were produced contemporaneously with this case. Thus, they do not contemplate the specific circumstances presented here.

[21] *See* Doc. 70-1, at ¶ 12.

will most likely be present at the examination,[22] which, as Magistrate Judge Humphreys pointed out, calls into question Caffrey's and defense counsel's other experts' assertions that the presence of a third party or a recording device will invalidate the examination, is more than enough to enable the Magistrate Judge to conclude that defense counsel's experts' concerns were exaggerated, and that Defendants will not be left without an expert because of the imposed condition. As a result, the Magistrate Judge did not err in implicitly giving this contention little weight.

Defendants' second argument is that the Magistrate Judge's ruling unfairly deprives them of Dr. Caffrey's services. It is well established that "[t]he court 'is not required to accept defendant's proposed examiner as the examining psychologist.' "[23] The rationale behind this rule is compelling because to do otherwise would create a situation where the tail was truly wagging the dog, as the Court's ability to fashion appropriate conditions would be made contingent upon what defense counsel's expert said was acceptable to him. Therefore, the fact that defense counsel's expert has decided not to examine Plaintiff because the examination will be recorded is also of little weight.

Comparing the parties' respective interests, the Court finds that Magistrate Judge Humphreys did not clearly err or act contrary to established law by requiring Plaintiff's examination to be recorded. The record supports Magistrate Judge Humphreys' conclusion that Plaintiff has demonstrated a need for the recording of the examination. Further, as explained above, the record

---

[22]Neither Defendants nor their expert assert that a translator would not be needed if Paz is examined by a practitioner who only speaks English.

[23]*Hertenstein*, 189 F.R.D. at 631 (quoting *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995)).

and the applicable law supports the conclusion that Defendants' interests do not outweigh Plaintiff's. Therefore, the Court affirms the imposition of the challenged condition.

**Examination in Honduras Requirement**[24]

The general rule is that the plaintiff must appear for examination in the state in which he filed his action and pay the expenses associated with his travel to the forum state.[25] However, as is true of most general rules, there are exceptions. The Court may deviate from the general rule when the plaintiff makes a good cause showing for so doing.[26] In their briefing, Defendants argue that the Magistrate Judge's ruling should be reversed because no showing was made sufficient to justify the condition imposed.

The Court agrees that the Magistrate Judge's ruling does not make a sufficient showing. First, the fact that Plaintiff is now residing in Honduras is not in and of itself a sufficient enough reason to force Defendants to have to fly their expert to Honduras for a Rule 35 exam.[27] Second, contrary to Plaintiff's argument, Defendants' actions do not justify the imposition of the said condition. This is not a case where the plaintiff informed the defendant months in advance that he would be leaving for good on a certain date; rather, the plaintiff in this case, who had been living in Wichita prior to the accident and apparently immediately after it, merely told the defendants that he had a desire to return home. It was not until a couple of weeks before the exams were scheduled

---

[24]It is not entirely clear whether the Magistrate Judge's Order actually requires Defendants to perform the Rule 35 examination in Honduras. However, because the parties' arguments treat the Order as doing so, the Court will assume that it does.

[25]*See, e.g., McCloskey v. United Parcel Serv. Gen. Serv. Co.*, 171 F.R.D. 268, 270 (D. Or. 1997) (citing *Eckmyre v. Lamber*, 1988 WL 573858 (D. Kan. Sept. 6, 1988)).

[26]*Chaparro*, 1994 WL 714369, at *4.

[27]*See, e.g., Beighter v. Suntrust Banks, Inc.*, 2008 WL 1984508, at *4 (W.D. Tenn. April 30, 2008) (denying the plaintiff's request to have his examination take place in Ohio, as opposed to Tennessee, because he was indigent).

to take place that Plaintiff actually gave Defendants a firm deadline. Under these circumstances, Defendants' failure to examine Plaintiff before he left the Country does not justify forcing them to now go to Honduras. Third, counsels' suggestions that Plaintiff will not be able to legally return to the United States for ten years, and the fact that Plaintiff pled the Fifth Amendment when asked about his immigration status, are insufficient to require that the Rule 35 examination take place in Honduras.[28] If Plaintiff believes that his Rule 35 examination should take place in Honduras because of his illegal status, he must first put forth evidence establishing that he cannot legally appear in this Country, as opposed to having his attorneys make assertions that merely raise the issue and leaves the Court guessing as to whether that is really the case.[29] Therefore, for the reasons just stated, the Court finds that Plaintiff failed to make a sufficient showing to force Defendants to perform the exam in Honduras, and, as a consequence, that the Magistrate Judge acted contrary to law in imposing the condition at issue (assuming that the Magistrate Judge did in fact impose such a condition). This matter is remanded to the Magistrate Judge for further proceedings, findings and conclusions. On remand, Magistrate Judge Humphreys may impose the Honduras location condition if the necessary factual and legal findings to justify such an imposition can be made upon proper showing by the parties.

---

[28]*See, e.g., Dodd-Anderson*, 1993 WL 273373, at *2 (stating that the court would not grant the party the sought after relief based solely on the party's unsupported representations; rather, before such relief would be granted, the party must produce evidence, such as an affidavit, in support of its position).

[29]Because the Court finds that Plaintiff has not made an adequate showing as to whether he can legally enter this Country, the Court does not answer the question that logically follows: whether a plaintiff's inability to enter the Country legally is a sufficient enough reason to require that a Rule 35 examination take place in his homeland. On remand, if the requisite showing is made, the Magistrate Judge will have the opportunity to address this question in the first instance.

**Denial of Request for Limitations on the Reproduction and Distribution of the Train Video**

Under our system's liberal discovery rules, a party must show good cause why a court should place restrictions on materials received during the discovery process.[30] While the good cause standard articulated under Rule 26(c) is "highly flexible, having been designed to accommodate all relevant interests as they arise,"[31] the party seeking the protection must necessarily "submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.' "[32] "Broad allegations of harm unsubstantiated by specific examples of articulated reasoning, do not satisfy the rule 26(c) test."[33]

Defendant UP argues that the Magistrate Judge erred in denying its request for limitations for two reasons: first, the video in question is extremely graphic, and if it was freely disseminated it could be easily modified and manipulated, and second, it is possible that Plaintiff's counsel may attempt to use the video for commercial purposes. As will become clear below, UP's arguments are heavy on rhetoric, but light on substance.

The Court has watched the train video. As noted by the Magistrate Judge, "the video shows plaintiff's car (1) traveling in the same direction as the train on a road that parallels the railroad tracks, (2) slowing down for an intersection, (3) turning right without stopping, and (4) proceeding through the railroad crossing."[34] Because the video is mounted high up on the train, it does not show

---

[30]*See* Fed. R. Civ. P. R. 26(c)

[31]*Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008).

[32]*Gottstein v. The Nat'l Assoc. for the Self Employed*, 186 F.R.D. 654, 657 (D. Kan. 1999) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

[33]*Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 389 (D. Utah 1991).

[34]*See* Doc. 89, at 4.

the actual collision. Furthermore, the video does not show the victims, the train crew members involved in the subject accident, or even the name of the Company operating the train. There is absolutely nothing in the video that makes any of the actors in this tragic affair readily identifiable. Thus, even if the video was manipulated or spliced, it is highly unlikely that Defendants, Plaintiff and his family, or the train crew members could be injured. Therefore, for these reasons, the Court finds that Defendant UP's first argument that the Magistrate Judge erred in denying its request for limitations fails.

Defendant's second argument also fails. First, there has been no showing that Plaintiff's counsel intends to use the subject video for commercial purposes. Further, even if there had been, as recognized by Defendant UP, the general rule is that "a party is not prohibited from voluntarily disclosing any information received during discovery."[35] The cases from courts in the Tenth Circuit that Defendant cites do not provide a basis for deviating from this rule.[36] In each of those cases, the video that the party was seeking to have limits placed on clearly identified them. Here, in contrast, the video in question does not identify any of the actors. Thus, the interest that was present in Defendant's cases, namely a person's interest in not having their videotaped deposition disseminated to the masses because it could cause embarrassment and possibly be annoying, is not presented in

---

[35] *See, e.g., Jepson Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994); *Cowan v. Gen. Motors Corp.*, 2007 WL 1796198, at *1 (D. Kan. June 19, 2007) (quoting Laurie Dore, Ronald J. Hedges, Kenneth J. Withers, *Best Practices Addressing Protective Orders, Confidentiality & Public Access in Civil Cases*, THE SEDONA GUIDELINES, at 5, http://www.thesedonaconference.org/ (March 2007)).

[36] *See Am. Family Mut. Ins. Co. v. Minor*, 2007 WL 4365694 (D. Colo. Dec. 10, 2007); *Drake v. Benedek Broad. Corp.*, 2000 WL 156825 (D. Kan. 2000).

this case. Accordingly, the Court denies Defendant UP's invitation to reverse Magistrate Judge Humphreys' ruling on this ground.[37]

In sum, Defendant UP has failed to make a sufficient showing that a protective order limiting the production and distribution of the video in question should have been granted. Therefore, the Court affirms Magistrate Judge Humphreys' Order relating to the collision video.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Review of Magistrate Judge Humphreys' Rule 35 Orders (Doc. 91) is hereby GRANTED IN PART and DENIED IN PART, and the matter regarding the location of Plaintiff's examination is REMANDED to the Magistrate Judge for further findings.

**IT IS FURTHER ORDERED** that Defendant Union Pacific Railroad Company's Motion for Review of Magistrate Judge Humphreys' Order Denying its Request for a Protective Order (Doc. 95) is hereby DENIED.

**IT IS SO ORDERED**.

Dated this 8th day of March, 2011.

*[signature: Eric F. Melgren]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[37]The Court is cognizant of the fact that in *Allgier v. Union Pac. R.R. Co.*, No. 08-226, slip op., (S.D. Ill. Oct. 10, 2008), a magistrate judge granted the railroad company's request to limit the production and distribution of the accident video. The Court finds this case to be of little use to Defendant for multiple reasons. First, there is no discussion as to what the video actually showed. Thus, there is no way to tell if the *Allgier* case can be meaningfully compared to this one. Second, even assuming that the *Allgier* video is sufficiently similar to the one here, the *Allgier* order is not particularly persuasive, as the court's holding is based solely on the fact that public dissemination of the video could result in its manipulation. There was no discussion, though, as to how this could injure one of the actors in the accident. Third, the magistrate judge was not applying the deferential standard of review that this Court must in this case.