# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CESAR OBDULIO PAZ MALDONADO, )
et al., )
 )
      **Plaintiffs,** )
 )
v. )   Case No. 09-1187-EFM
 )
UNION PACIFIC RAILROAD CO., et al., )
 )
      **Defendants,** )
 )
 )

## MEMORANDUM AND ORDER

This matter is before the court on (1) plaintiff's motion to "set deposition conditions" (Doc. 126); (2) plaintiff's motion to proceed with corporate designee depositions (Doc. 127); and (3) remand from Judge Melgren concerning the location of defendants' Rule 35 examination of plaintiff. The rulings are set forth below.

## Background

Highly summarized, Cesar Paz was a passenger in a car that was struck by a train at a railroad crossing in Wichita, Kansas on April 29, 2008.[1] His alleged injuries include

---

[1] The driver of the car was Gerson Benegas. His surviving wife, Zuyapa Jimenez, and Jesus H. Guerrero, administrator for his estate, accepted defendants' offers of judgment and Mr. Paz is the only plaintiff whose claims have not been resolved.

"numerous fractures, internal injuries, loss of all teeth, loss of memory, [and] traumatic brain injury." Mr. Paz seeks monetary damages for "extensive pain, suffering, mental anguish, emotional distress, permanent disabilities, loss of earning capacity, loss of ability to do household chores, medical and surgical expenses, [and] economic and non-economic losses." He is a citizen of Honduras who lived and worked in the United States for an unknown period of time. He left the United States in March 2010 and currently resides in Honduras.

**Plaintiff's Motion to Set Deposition Conditions (Doc. 126)**

Plaintiff's counsel plans to travel to Honduras to depose plaintiff's relatives and friends and also take plaintiff's deposition for a third time. Defendants object to the Honduran depositions. In an effort to resolve the deposition controversies before incurring fees and expenses related to airfare and other logistics, plaintiff moves for an order "setting the deposition conditions." Although the motion is procedurally awkward, early resolution of the parties' discovery disagreements will save both time and money.[2]

The individuals proposed for depositions fall into three categories. The first group is composed of eight friends and relatives who will apparently provide "before-and-after" deposition testimony concerning plaintiff's injuries. Defendants object to their deposition, arguing that these witnesses were not disclosed in plaintiff's Rule 26(a) initial disclosures

---

[2] Normally, plaintiff would issue subpoenas to the non-party witnesses and defendants would counter with a motion to quash/protective order. However, because the non-party witnesses live in Honduras, the logistical requirements to set up the depositions involve significantly greater expenditures and are not as easily rescheduled.

-2-

nor were they listed in any of plaintiff's discovery responses. Defendants also argue that the eight depositions are (1) unnecessarily cumulative and burdensome, given the needs of the case and (2) a subterfuge to support a request to conduct a third deposition of plaintiff. Finally, defendants argue that plaintiff makes no mention of any efforts to satisfy the legal formalities for taking a deposition in a foreign country and there is no guarantee that the witnesses will appear and provide answers to deposition questions should defense counsel travel to Honduras. Defendants contend that, at a minimum, plaintiff should be required to post a bond for defendants' costs to attend the depositions. The objections are addressed in reverse order below.

Plaintiff provides no explanation concerning the manner in which these eight witnesses will be compelled to appear and answer deposition questions in Honduras. Presumably, the friends and relatives have voluntarily agreed to appear and testify as a courtesy to plaintiff. However, because there is no indication that the witnesses would be legally compelled to provide deposition testimony, no depositions of these witnesses will be taken unless plaintiff posts a bond sufficient to cover defendants' time and travel expenses to Honduras. The bond will be forfeited to defendants if the "voluntary" witnesses described in this opinion fail to appear and properly answer deposition questions.

The court also agrees that the request to take eight depositions of friends and relatives

for "before-and-after" testimony is unnecessarily cumulative, given the needs of this case.[3] The court will allow three depositions of this group to be taken and plaintiff shall provide the names of the three witnesses **30 days** prior to any scheduled deposition.

Finally, plaintiff's failure to list these eight witnesses in his initial disclosures or discovery responses is troubling but not fatal. The schedule in this case was disrupted by efforts to expedite mediation of plaintiff's claims and numerous other discovery disputes. The belated disclosure of these "before-and-after" witnesses is not prejudicial.

The second deposition category involves Maria Angela Jimenez, plaintiff's wife, a citizen and resident of Honduras.[4] Defendants argue that because plaintiff is seeking damages for loss of consortium his wife should be required to appear for deposition in the United States. The difficulty with this argument is that Ms. Jimenez is *not* a party in the case and defendants provide no legal authority to compel a non-party's attendance for a deposition in the United States.[5] Because this court has no authority to order a non-party witness

---

[3] The list of eight includes a grandfather, cousin, aunt, uncle, two brothers-in-law, and two friends. Plaintiff provides no argument or suggestion that the testimony of one witness will be materially different from testimony by other witnesses.

[4] Plaintiff's wife was listed as a witness in his discovery disclosures; thus, there is no argument that she was not timely disclosed.

[5] On the surface, defendants' argument has some logic. However, Kansas law is clear that a spouse does not have the right to pursue a claim for loss of consortium. See, e.g., Annis v. Butler Manufacturing Co., 715 F. Supp. 328, 330 (D. Kan. 1989)(wife had no separate cause of action for loss of consortium due to personal injury suffered by spouse). A loss of consortium claim is vested in the injured plaintiff. Id.

residing in Honduras to appear for deposition in the United States, defendants' argument is rejected. Plaintiff may take the deposition of Ms. Jiminez in Honduras, assuming she agrees. However, because the deposition is apparently voluntary and there is no guarantee she will appear and answer deposition questions, plaintiff will be required to post a bond sufficient to cover defendants' time and travel expenses to Honduras. Similar to plaintiff's other "voluntary" witnesses, the bond will be forfeited to defendants if Ms. Jiminez fails to appear and properly answer deposition questions.

The third deposition dispute concerns plaintiff counsel's plan to take plaintiff's deposition in Honduras for use at trial because "plaintiff will be unavailable for trial." Plaintiff argues that because of his immigration "situation," he is not permitted to reenter the United States for ten years. Defendants oppose the Honduran deposition, arguing that plaintiff (1) has been deposed twice already and (2) has not established his "unavailability" for trial. As explained in greater detail below, plaintiff's request to take a third deposition is denied.

A party must obtain leave of court to take a deposition if "the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(ii). Mr. Paz's first deposition was taken by defendants on December 1, 2009 in Wichita, Kansas. The deposition was taken on an expedited basis because Mr. Paz desired early mediation and was eager to return to Honduras. In response to questions about his immigration status and ability to work and remain in the United States, plaintiff invoked his Fifth Amendment right against self-incrimination and refused to answer the questions. Plaintiff's counsel had the opportunity

to elicit testimony from Mr. Paz but asked only a limited number of questions.

On February 9, 2010, the court held a status conference and plaintiff's counsel indicated that Mr. Paz's departure from the United States was imminent. Because of Mr. Paz's (1) anticipated departure and (2) medical treatment after the first deposition, the court granted defendants permission to take a supplemental deposition of Mr. Paz. That second deposition took place in Wichita on March 11, 2010. Once again, plaintiff's attorney asked him no questions during the deposition. Following the deposition, Mr. Paz left the United States and returned to Honduras.

Plaintiff does not directly address Rule 32(a)(2) but argues that the deposition should proceed in Honduras because immigration issues make him unavailable for trial. The argument is not persuasive. First, plaintiff offers no explanation why the testimony he now seeks to "preserve" was not taken at the two earlier depositions. During the first deposition, all counsel were aware of plaintiff's desire to leave the country. More importantly, the second deposition was taken in March 2010 because Mr. Paz had made clear that his departure from the United States to Honduras was "imminent." Under the circumstances, plaintiff "had ample opportunity to obtain the information by discovery." Fed. R. Civ. P. 26(b)(2)(C)(ii).

In addition, plaintiff's argument that he is "unavailable for trial" is not persuasive. First, plaintiff's explanation of his "immigration" status and ability to enter the United States is exceedingly vague. No helpful argument is presented concerning the applicable statutes and regulations and it is unclear whether plaintiff has exhausted all available alternatives for

appearing in the United States for trial. Equally important, plaintiff asserted his Fifth Amendment privilege and refused to answer deposition questions, interrogatories and production requests concerning his immigration status. <u>Memorandum and Order</u>, Doc. 120, filed November 11, 2010 (denying defendants' motion to compel based on plaintiff's assertion of Fifth Amendment privilege). Plaintiff now seeks to justify a deposition in Honduras based on immigration information which he refused to provide earlier to defendants. The court rejects this approach and plaintiff's request to conduct a third deposition of Mr. Paz in Honduras is denied.

**IT IS THEREFORE ORDERED** that plaintiff's motion to set deposition conditions **(Doc. 126)** is **GRANTED IN PART**, consistent with the rulings herein.

### Plaintiff's Motion to Proceed with Corporate Designee Depositions (Doc. 127)

Plaintiff moves the court for an "order that allows corporate designee depositions to proceed" and asks for a "protective order." (Doc. 127). Defendants oppose the motion, arguing that plaintiff's motion asks for a protective order without citing justifications and otherwise violates the precepts of Fed. R. Civ. P. 30(b)(6) and 26(g).

A status conference was conducted on February 1, 2011 and, after considering the briefs and oral arguments, the court directed plaintiff to revise its deposition notices and "start over." Accordingly, plaintiff's motion in its current form is MOOT.

**IT IS THEREFORE ORDERED** that plaintiff's motion to proceed with corporate designee depositions **(Doc. 127)** is **MOOT.**

### Location of Rule 35 Examination

The undersigned judge granted defendants' motion for a Rule 35 neurological examination of plaintiff with certain conditions (Doc. Nos. 74 and 88) and defendants sought review of those conditions pursuant to Fed. R. Civ. P. 72 and D. Kan. Rule 72.1.4. Judge Melgren affirmed the majority of those conditions but remanded the matter for a determination concerning the location of the examination (Honduras or the United States). <u>Memorandum and Order</u>, Doc. 136, filed March 8, 2011. Consistent with the court's directive, the parties filed supplemental briefs and the matter is ripe.

Plaintiff contends that the examination should be conducted in Honduras because he is prohibited for unspecified reasons from entering the United States for ten years and defendants argue that the examination should be conducted in the United States. As noted by Judge Melgren,

> The general rule is that the plaintiff must appear for examination in the state in which he filed his action and pay the expenses associated with his travel to the forum state. However, as is true of most general rules, there are exceptions. The Court may deviate from the general rule when plaintiff makes a good cause showing for so doing.

Doc. 136, p. 10 (citations omitted). Judge Melgren also ruled that plaintiff "must first put forth evidence establishing that he cannot legally appear in this country, as opposed to having his attorneys make assertions that merely raise the issue and leaves the court guessing as to

whether that is really the case." Id. at p. 11.

In an attempt to provide "evidence" to the court concerning plaintiff's prohibition from reentering the United States, plaintiff submits the affidavit of David K. Link, a local attorney who practices immigration law. Mr. Link's affidavit is highly abbreviated and states (1) that he was contacted in February 2010 and asked for legal advice for Mr. Paz, and (2) that "after hearing the facts, it was and is my professional opinion that Cesar Paz is inadmissible to the United States for 10 years after he left the country. I am aware of no exceptions or waivers that would apply in his case." (Doc. 144-2). Nowhere does plaintiff explain why he cannot reenter the United States.

Mr. Link's affidavit is not persuasive evidence concerning plaintiff's ability to reenter the United States. No facts are provided nor are any statutes or regulations cited. At best, the affidavit merely parrots the conclusory assertions by plaintiff's counsel that plaintiff is unable to reenter the United States for ten years. Moreover, as noted above, plaintiff asserted his Fifth Amendment privilege in refusing to answer discovery questions related to his immigration status while in the United States but now relies on those "circumstances" to argue that his Rule 35 neurological examination should be conducted in Honduras. Such an approach is unacceptable.

Plaintiff also submits an affidavit from Daniel Velazquez, a friend living in the United States, which asserts that wages for agricultural workers in Honduras are approximately $7.00 to $8.00 per day and that travel to the United States would create a significant financial hardship for plaintiff. The difficulty with this argument is that counsel has submitted a

breakdown of expenses that exceeds $25,000 for time and travel to Honduras for depositions. The expense of plaintiff traveling to the United States pales in comparison to the amounts plaintiff's counsel is willing to spend for depositions in Honduras. Under the circumstances, plaintiff has not shown good cause that the Rule 35 neurological examination be conducted in Honduras.

**IT IS THEREFORE ORDERED** that plaintiff shall appear in the United States for a Rule 35 neurological examination. The parties shall confer concerning a mutually agreeable date and submit a proposed order setting forth the conditions, date, and time, consistent with the rulings in this case. The examination shall be completed on or before **July 8, 2011.**[6]

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 4th day of May 2011.

               S/ Karen M. Humphreys
               _____
               KAREN M. HUMPHREYS
               United States Magistrate Judge

---

[6] The possibility exists that the United States may refuse to issue a visa for plaintiff to enter this country. The court will address that situation when and if it occurs.